## ST. LOUIS & S. F. RY. CO. v. ROYAL INSURANCE CO.

No. 13622—Opinion Filed April 1, 1924.

Rehearing Denied June 17, 1924.

1. Carriers—Movement of Cotton "for Compression in Transit" — Constructive Delivery.

The two shipments of cotton involved in the action on the fire insurance policy in this suit moved to the compress at Hobart, Okla., under billing "for compression in transit." In order to give effect to such contract in a practical manner, among all the parties, in relation to inbound shipments of cotton for compression, constructive delivery to the owner or consignee at the compress has been substituted for actual or physical delivery. Constructive delivery is made possible and of practical effect by making the compress receipt the indicia of ownership and causing the same to be delivered to the owner or consignee of the shipment by and through the carrier on surrender of original bill of lading.

2. Same—Failure to Deliver—Liability for Loss by Fire.

The billing under which the shipments moved specified the names of the parties at Hobart to be advised of the arrival of the cotton. The carrier not having notified such parties in order that they might surrender the original bills of lading and receive the compress receipts, at the time the cotton was destroyed by fire on the compress platform, held, the carrier had not made delivery to the owner or consignee at the compress at the time the loss by fire occurred as it had contracted to do under the billing on which the cotton moved. Held, further, that the carrier having breached its contract for carriage and delivery of the cotton to the owner or consignee at the compress, it was liable to such parties for failure to so deliver the shipments.

3. Same—Liability of Insurance Company to Carrier.

The carrier having settled its liability to the owners of the cotton for the fire loss and the fire insurance policy which was issued by the defendant to the plaintiff providing that the carrier would be insured against any loss of cotton by fire held in custody by the compress company for the carrier, until, the surrender of the bills of lading, held, the insurance company by refusing to pay the carrier for loss in settlement with the owners of the cotton breached the policy of insurance sued on herein.

4. Same—Instructed Verdict for Carrier.

The parties having submitted the trial of the cause to the court on an agreed statement of facts which showed liability of the defendant for the amount sued for in the action, the carrier was entitled to an instructed verdict therefor against the defendant.

5. Same — Reversal of Judgment Against Carrier.

Record examined; held, the record is insufficient to support judgment for the defendant and discloses that the plaintiff is entitled to an instructed verdict against the defendant for the amount sought to be recovered in this action, with interest thereon from the date the carrier settled with the owners.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Kiowa County; Thos. Edwards, Judge.

Action by the St. Louis and San Francisco Railway Company against the Royal Insurance Company, for debt on insurance policy.

Judgment for defendant. Plaintiff brings error. Reversed and remanded, with directions.

W. F. Evans, Stuart Sharp & Cruce, and Ben Franklin, for plaintiff in error.

Locke & Locke, Ralph Randolph, and Eugene P. Locke, for defendant in error.

Opinion by STEPHENSON, C. The action by the plaintiff in error on the insurance policy involved herein concerns two shipments of cotton originating within the state of Oklahoma, and moving over the plaintiff in error's line of railway, under billing subject to shippers order, with instructions therein to notify the parties named in the billing of the arrival of the shipment at Hobart, Okla. One shipment arrived at Hobart on March 15, 1916, the other shipment on March 18th, and both shipments were placed by the carrier on the compress switch track and unloaded in the afternoon of March 20th, and equipment released. Fire occurred on the platform of the compress company and destroyed the two shipments on March 21st. This cause was tried on an agreed statement of facts, in which it was admitted the fire occurred without the fault of the carrier. The carrier considered itself liable to the owners of the cotton for the loss, and settled their claims. The carrier called on its insurer for reimbursement, which the latter refused to do. The railway then commenced its action against the insurance company on the policy, which resulted in judgment for the defendant insurance company. The plaintiff carrier has appealed the cause to this court and assigns several of the proceedings had in the trial as error for reversal of the judgment. In substance, all the assignments go to the following questions presented on appeal by the carrier; (a) Insufficient evidence to support judgment for defendant; (b) the judgment is contrary to law.

An appeal involving similar question was considered in the case of Wichita Falls & Northwestern Ry. Co. v. Brown, 76 Okla. 84, 183 Pac. 889. The defendant insurance company has presented its argument and authorities for the support of the judgment of the trial court, aside from the Brown Case, and desires this appeal to be considered on its merits without reference to the rules applied in the Brown Case. It is the contention of the defendant that the Brown Case did not reach the conclusions of law which ought to have been applied in the case, and urges the application of other rules in this cause. The defendant undertakes to differentiate between this appeal and the Brown Case, and thereby seeks application of certain rules for sustaining the judgment

of the trial court in this appeal. We will first consider this appeal on its merits as desired by the defendant in error. There was no demand for the cotton at Hobart or in its vicinity for use in the manufacture of cotton products. It was the purpose and understanding of all parties concerned that the cotton shipments would move from the originating point within the state to Hobart for compression by the Interstate Compress Company. After compression the cotton would be reloaded on this carriers line or other connecting carrier lines for transportation to some point where it was required for the manufacture of cotton products. The two shipments moved into Hobart under billing subject to the shippers orders, for compression, which contained instructions to the carrier to notify the parties named in the billing of the arrival of the cotton at its destination, i. e., the Interstate Compress Company. The shipment moved under a tariff, which may be termed a contract for a "compression in transit" rate. In substance, such a contract provides that shipments originating within the state which require compression for movement to interstate points, will be moved from the originating point to the compression point in the state at local freight rates. But further provides, if after compression the cotton is reloaded and billed over the incoming carrier's line, or its connecting lines to an interstate point, such sum paid for freight charges on the inbound shipment to the compress will be refunded so that the freight charges paid between the originating point and final interstate point, will equal the interstate rate between the originating point and the final interstate point. The effect of such a contract or rate is to enable the purchasers and shippers of cotton who desire to have the cotton compressed in this state for shipment to interstate points, to move the cotton, originating at points in this state, to final destination at interstate points, on the same rates which would have been charged on compressed cotton at the originating points to interstate points. In other words, under such rate and contract, all originating points in this state for shipments of cotton to interstate points have equal rates on like shipments, and the same rates, as if a compress had been located at the originating point. If it was not for the "compression in transit" contract and rate on cotton, originating in this state for interstate points, it would result in a material discrimination against all originating points which did not have the advantage of compress facilities. Hundreds of small shipments of cotton are assembled at the compress point for compression and reshipped to interstate points. The bales of cotton and shipments are sim-

ilar in appearance and at the compression point it would be necessary for the owner or his agent to be present so that the carrier could identify the owner's cotton and make physical delivery, which would be tedious and expensive to all parties. In the application of the "compression in transit" rate and contract, it is not practical to make physical delivery of the cotton to the owner; in fact, there is no occasion for physical delivery to the owner or consignee of the commodity at the compress point. At the intermediate point not only the compress company requires the physical possession of the cotton, and that possession and custody is only for the purpose of compression to start the shipment on its final journey. In order to facilitate the application of the "compression in transit" contract, a practice and custom for making constructive delivery of the cotton at the compress to the consignee in lieu of the physical delivery has come into existence. The constructive delivery of the cotton on the compress platform to the consignee or owner, is accomplished by the compress company issuing and delivering to the owner through the carrier, a receipt in the following language:

"Interstate Compress Company No. —

"Hobart, Okla., Mar. 20, 1916.

"One Bale Cotton for account of John Doe will be delivered to the holder hereof on return of this receipt and payment of all charges. Not responsible for loss by damage, fire, flood, or other agencies unless caused by the willful act or gross negligence of this company."

At the time of the delivery of the cotton and issuance of the receipt, if the freight charges have not been paid, acceptance of this receipt by the owner of the cotton would require the latter to pay the freight charges against the shipment held at the compress. This provision is given effect by a condition of the bill of lading under which the cotton moves, which requires the owner of the cotton to surrender the bill of lading before receiving the shipment, i. e., the compress receipts. In order to make all parties safe from loss, in adopting constructive delivery, in lieu of actual delivery, the compress company delivers the receipt to the carrier. The carrier holds this receipt until the owner surrenders to it the bill of lading under which the shipment moved and then the receipt issued by the compress company is delivered to the owner of the cotton. The carrier at the time of the delivery of the receipt would require the payment of the accrued freight charges and the control of the cotton has not passed from the carrier at the time it receives the receipt and during the time it holds the receipt. The cotton is subject to such control of the carrier at the compress until the compress receipt is delivered by the carrier to the owner. This is made so by the terms of the receipt, which is the only authority given to the owner to receive the cotton from the compress company for reshipment. By the terms and effect of the "compression in transit" contract, the provisions requiring the surrender of the bill of lading before receiving the shipment, and the terms of the receipt, the receipt is made the indicia of ownership. Hence, we have a practical system and plan created for constructive delivery of the shipment at the compress to the owner, in lieu of actual physical delivery of the commodity. As constructive delivery on the platform of the compress on "compression in transit" shipments has been substituted for actual or physical delivery to the owner or consignee, the only fact for us to ascertain in this case, in order to decide the cause, is whether such constructive delivery had been made to the owner or the consignee prior to the loss of the shipments by fire. In this action it is admitted by the insurance company that the carrier had not notified the parties named in the billing or delivered to the owner or consignee, the receipts prior to the loss. So, it follows that the shipments of cotton were in the custody of the carrier at the time of the loss by fire at the compress. Hence, the carrier breached its contract for the delivery of the shipments to the owner or consignee at the compress at Hobart.

The insurance company denies its liability on the following provision of the contract under which the shipment moved:

"Except in case of negligence of the carrier—the carrier shall not be liable for loss, damage, or delay occurring while the property is stopped and held in transit upon request of the shipper, owner, or party entitled to make such request."

The answer to this provision or condition of the contract is that the shipment was not being held by the owner or the compress company at the time of the loss for the reason that the carrier had not yet completed its contract for carriage of the shipment by delivery to the owner at the compress. This is made apparent by the foregoing conclusions. It is admitted by the insurance company that the owner and parties named in the bills of lading to receive notice had not been notified of the arrival of the shipment at the time of the loss by the carrier. It is admitted that the carrier had not requested the surrender of the bills of lading at the time the fire loss occurred. Condition "C" of the contract of insurance sued on herein provides as follows:

" 'C.' On Inbound cotton carried by the assured on local bills of lading issued by it, or by its connections, consigned to 'shipper's order' and held in custody of any of said compress companies, for account of the assets and surrender the bills of lading.

It is made apparent by the provisions of the policy quoted above, and the conditions of the contract under which the shipments were moved to Hobart, the carrier was liable to the owners or consignees for the cotton in question. It follows that the defendant breached its contract of insurance when it refused to pay the carrier for the loss incurred by the fire. Wichita Falls & Northwestern Ry. Co. v. Brown, supra.

The defendant undertakes to distinguish between this cause and the Brown Case, because of certain claimed differences between the two records. The defendant asserts the following existed in the Brown Case:

(1) The owner had made arrangements with the bank to receive the compress tickets and surrender the bills of lading:

(2) At the time of the loss in the Brown Case the bank had already notified the cashier of the defendant carrier, it was ready to receive the tickets and surrender the bills of lading.

(3) The agent of the carrier had already delayed the delivering of the tickets to the bank for several hours at the time the loss occurred.

The defendant asserts the following conditions exist in this appeal, which distinguishes it from the Brown Case:

(1) No previous arrangements had been made by the owner to designate any person to whom the tickets might be delivered by the carrier for surrender of the bills of lading to the carrier. The foregoing assumption is not supported by the agreed statement of facts for the reason the billing gave the names of the parties to be notified of the arrival of the shipments. The parties had not been notified by the carrier of the arrival of the shipments prior to the loss. The insurance company is not in a position to say the parties named in the bills of lading for notification, would not have surrendered the bills of lading and received compress receipts, if they had received notice.

(2) The insurance company asserts the retention of the tickets by the carrier was due to the delay on the part of the consignee in completing his arrangements for the surrender of the bills of lading and payment of the freight charges.

We think that the insurance company is not warranted in making this assumption for the reason that it admits that the carrier had not given notice of the arrival of the shipments to the persons named in the bills of lading. The reasons given by the insurance company and assumptions do not distinguish this appeal from the Brown Case, and the rules applied in the Brown Case ought to control the disposition of this case. This cause was submitted to the trial court on an agreed statement of facts and the disposition of the cause involved only questions of law. On the stipulation of facts between the parties which was submitted to the court for the trial of the cause, the plaintiff carrier was entitled to judgment against the insurance company for the amount sued for on the policy.

Therefore, it is recommended that this cause be reversed and remanded with directions to the trial court to enter judgment for the plaintiff on the insurance policy against the defendant for the amount sued for on account of loss of the shipments of cotton by fire.

By the Court: It is so ordered.